UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENT LEROY CLARK, | Civil Action No. 19-17214 (MCA) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter has been opened to the Court by Petitioner Kent Leroy Clark's (Petitioner or "Clark") filing of a authorized successive motion pursuant to 28 U.S.C. § 2255, challenging his § 924(c) conviction based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which invalidated the "residual clause" in the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e).  At this time, the Court grants the § 2255 motion in part, and vacates Petitioner's § 924(c) conviction and 5-year consecutive sentence. The Court denies Petitioner's request for a full resentencing and Petitioner's remaining convictions and sentences shall remain undisturbed. The Court also denies a certificate of appealability ("COA"). Finally, Petitioner's motion for emergency relief and a status conference are otherwise denied in light of the disposition of this matter.

I.     <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>[1]

Petitioner Kent Leroy Clark is currently serving a life sentence for 1990 convictions for extortion, kidnapping, theft, and other offenses. On January 14, 1984, Clark, and a co-conspirator

---

[1] The factual background is taken from the record in this proceeding, as well as the available record in Petitioner's criminal case.

("DeVose") kidnapped and restrained a mail carrier at gunpoint; disguised themselves in the mail carrier's clothes; and used the disguise to gain entry to the home of a local bank branch manager. Once inside, Clark and his co-conspirator handcuffed the manager's 85-year-old mother and daughter and telephoned the manager at work, demanding a $200,000 ransom. Clark also raped the manager's daughter at gunpoint.

On January 11, 1990, Clark and his DeVose were indicted by a federal grand jury. Clark was charged in seven of eight counts with conspiracy and substantive offenses of extortion, assault, and kidnapping, as well as charges of stealing a U.S. Postal Service vehicle and using a firearm during a crime of violence, namely, the kidnapping. DeVose pled guilty and agreed to testify against Clark.

On December 6, 1990, after a five-day jury trial before the Honorable H. Lee Sarokin, Clark was convicted on all seven counts. On February 4, 1991, Judge Sarokin sentenced Clark to life imprisonment plus five years. Specifically, Clark was sentenced as follows:

| COUNT | CHARGE | DESCRIPTION | TERM |
| --- | --- | --- | --- |
| 1 | Conspiracy to Commit Extortion | 18 U.S.C. § 1951(a)(2) | 20 years |
| 2 | Conspiracy to Commit Assault and Kidnapping | 18 U.S.C. § 371 | 5 years |
| 3 | Attempted Extortion | 18 U.S.C. § 1951 & § 2 | 20 years |
| 4 | Assault on a Postal Employee by the Use of a Dangerous Weapon | 18 U.S.C. § 2114 & § 2 | 20 years |
| 5 | Kidnapping | 18 U.S.C. § 1201(a) | Life |
| 7 | Unlawful Carrying and Use of a Firearm During a Crime of Violence | 18 U.S.C. 924(c)(1) & § 2 | 5 years |
| 8 | Theft of a United States Postal Service Vehicle | 18 U.S.C. § 1707 | 2 years |

The sentences imposed on all counts—except Count 7—were ordered to run concurrently. As required by § 924(c), the five-year sentence on Count 7 was ordered to run consecutively to the other counts. Clark also was ordered to pay a special assessment of $50 per count, for a total of $350.

At the sentencing hearing, Judge Sarokin stated the following: "it is the intention of the Court that the defendant be imprisoned for a term of life, plus five years on count seven." Tr. at 700. In arriving at that sentence, the Court highlighted the lasting impact Clark's crimes had on his victims. The rape victim was "affected … physically and emotionally." *Id.* at 696. Over five years after the crime, she continued to be "unable to sleep at home alone or permit deliveries to be made to the house when she is there by herself" and she "watches people closely and continues to have nightmares." *Id.* The branch manager died the year after Clark held his family hostage and raped his daughter, "experienc[ing] very pronounced changes in his health after the offense, because he blamed himself for what happened." *Id.* at 697. The Court acknowledged that it was not possible to "attribute" Clark's crimes to his death, but concluded that there was "little doubt that it accelerated it." The Court noted that the kidnapped postal employee continued to experience fear from the incident and that the rape victim's grandmother remained terrified of anyone approaching the house. *Id.* The Court concluded:

> Short of outright murder, it is difficult for the Court to envision a more despicable crime than that in which this defendant engaged. Threats of force, extortion, kidnapping, rape and just the sheer acts of terror upon totally innocent people; a young girl, an elderly woman, and an average working man, postal employee, in addition to the bank officer If ever there was a crime that warranted substantial punishment, this is certainly it.

*Id.* at 697-98. The judgment of conviction was entered on February 7, 1991. The Court of Appeals affirmed the conviction and sentence. *See United States v. Clark*, 945 F.2d 396 (3d Cir. 1991).

In the interim, Petitioner has filed numerous motions seeking to set aside his convictions. He filed his first pro se 28 U.S.C. § 2255 petition in June 1998 (though he styled it as a motion for a new trial). Civ. No. 98-3887. On September 9, 1998, Judge Debevoise denied the motion as untimely without issuing a certificate of appealability. The Third Circuit denied Clark's application for a certificate in November 1999. Appeal No. 99-5054. Clark next filed a motion in the criminal case (Crim. No. 90-02) pursuant to 18 U.S.C. § 3582(c) seeking a reduction in sentence based on a change to the Sentencing Guidelines. On April 23, 2001, Judge Debevoise denied that motion because Clark's sentence was imposed before the Guidelines took effect. The Third Circuit affirmed. Appeal No. 01- 2299. Clark also separately sought leave from the Third Circuit to file a second § 2255 petition on various grounds. Appeal No. 01-1141. In March 2001, the Circuit denied his application, concluding that his arguments were untimely, inapplicable, and frivolous.

Petitioner also filed a series of motions in the District Court that, though styled in various ways, were simply a second § 2255 petition. Because Petitioner failed to obtain the requisite certification from the Court of Appeals, Judge Debevoise denied all of his requests in January 2004. Civ. No. 98-3887, DE19, 20. The Third Circuit again denied Clark's request for a certificate of appealability. Appeal No. 04-1619.

In April 2015, Clark filed a mandamus petition to compel certain federal agencies to search for biological evidence that he claimed might exonerate him. Civ. No. 15-2854, Dkt. No. 1. Because the Government already had voluntarily conducted such a search that revealed that the evidence had long before been destroyed, Clark stipulated to the voluntary dismissal of that petition in April 2016, which Judge McNulty ordered. Dkt. Nos. 16, 17.

In August 2016, Clark filed a pro se motion to dismiss the indictment in his criminal case. Crim. No. 90-12, Dkt. No. 4. In July 2018, Judge Walls determined that Clark's motion was "nothing more than a § 2255 petition in disguise (his third)" and denied the motion for Clark's failure to seek authorization from the Third Circuit. Crim. No. 90-12, Dkt. No. 8.

In August 2017, Clark filed a pro se 28 U.S.C. § 2241 petition against the Warden of FCI Fairton, asserting that he had newfound evidence of his innocence. Civ. No. 17-5791. Judge Bumb construed the motion as another § 2255 petition and transferred it to the Third Circuit for its assessment on whether certification was warranted. *Clark v. Warden, FCI Fairton*, Civ. No. 17-5791, 2017 WL 4679451, at *1-*2 (D.N.J. Oct. 17, 2017) (unpublished). On March 5, 2018, the Circuit determined that it was not. *See* Appeal No. 17-3291.

As relevant here, in June 2016, Clark filed a motion for authorization to file a second or successive § 2255 petition with the Third Circuit. Appeal No. 16-2884. Specifically, Clark sought to challenge his § 924(c) conviction based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which invalidated the "residual clause" in the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e). On August 19, 2019, following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated the "residual clause" in 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague, the Third Circuit granted Clark's motion so this Court could consider his challenge to his § 924(c) conviction. *See* Clark § 2255 DE 1-1; *see also In re Matthews*, 934 F.3d 296, 298 n.2 (3d Cir. 2019). Neither Clark's petition nor the Third Circuit's remand order addresses Clark's kidnapping conviction, and no additional grounds for relief were authorized by the Third Circuit.

The Court directed the government to answer the authorized motion for relief, and the Answer was filed on January 11, 2021. Instead of submitting a Traverse, Petitioner's counsel

filed an "Emergency Supplemental Motion to Vacate Sentence," and the Court directed the government to respond to the Supplemental Motion. The government filed its Supplemental Answer, and the Petitioner filed a Traverse. The matter became fully briefed on January 29, 2021, but the parties submitted supplemental letter briefs to address additional relevant authority.

## II.     DISCUSSION

### a. Petitioner's Authorized Motion Seeking to Vacate his § 924(c) Conviction

In his authorized Motion, Petitioner contends that his § 924(c) conviction should be vacated in light of the Supreme Court's decision in *Johnson*. There, the Supreme Court struck down as unconstitutionally vague the so-called "residual clause" of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B)(ii), which defined a violent felony to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson*, 576 U.S. at 296-97. Since Clark filed his petition in 2016, the Supreme Court also struck down as unconstitutionally vague 18 U.S.C. § 16(b)'s definition of a "crime of violence" and the similarly worded "residual clause" of § 924(c)(3)(B). *Davis*, 139 S. Ct. at 2324; *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In light of *Davis*, a predicate offense now can qualify as a "crime of violence" only if it satisfies the definition in § 924(c)(3)(A)'s "elements clause."

In this case, the version of § 924(c) in effect when Clark was charged did not include a definition for "crime of violence." 18 U.S.C. § 924(c) (Supp. 1985). Thus, at the time, courts applied the definition from 18 U.S.C. § 16. Because § 16(b) was invalidated in *Dimaya*, the analysis here ends up in the same place: having to satisfy the "elements clause" of § 16(a), which is essentially identical to § 924(c)(3)(A)'s: "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Petitioner

argues and the government concedes that the predicate offense for his § 924(c) conviction, kidnapping, is not categorically a crime of violence. Clark § 2255 Dkt. 1 at 16. The government explains this concession as follows:

> Because of these precedents, the Government agrees that a violation of the kidnapping statute, 18 U.S.C. § 1201(a), does not satisfy the elements clauses of § 924(c)(3)(A) and § 16(a), unless a death results. Kidnapping requires that the defendant "unlawfully seize[], confine[], inveigle[], decoy[], kidnap[], abduct[], or carr[y] away and hold[]" a person. Not all of these means require the use of physical force. Thus, under the categorical approach, a kidnapping without a death resulting does not qualify as a crime of violence.[citation omitted] *See United States v. Gillis*, 938 F.3d 1181, 1203-10 (11th Cir. 2019) (kidnapping under 18 U.S.C. § 1201(a) does not necessarily involve the use of force for the purposes of conviction pursuant to 18 U.S.C. § 373); *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019) (kidnapping in violation of 18 U.S.C. § 1201(a) is not a crime of violence under § 924(c)).

Dkt. No. 16 at 12.

In the ordinary case, this concession would lead to relief in a petitioner's § 2255 motion. Here, however, the government urges that Petitioner is not entitled to relief and asks the Court's to deny the motion because Clark does not challenge his other convictions in this § 2255 (and the Third Circuit only permitted him to challenge the § 924(c) conviction). Thus, vacating his § 924(c) conviction will have no practical effect on his undisturbed life sentence.

28 U.S.C. § 2255(a) allows a prisoner to move to vacate, set aside, or correct his sentence:

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence

him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Even if the petitioner is able to show that the sentencing court committed a constitutional error, the error cannot be redressed through a § 2255 petition unless it had a "substantial and injurious effect" that resulted in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted). The petitioner has the burden to demonstrate "actual prejudice." *Brecht*, 507 U.S. at 637.[2]

The government invites the Court to consider the analogous reasoning supporting the "concurrent sentence doctrine" and apply a similar rationale to this matter. The concurrent sentence doctrine rests on the same rationale underlying harmless-error review — namely, that courts should "conserve judicial resources by ... cleans[ing] the judicial process of prejudicial error without becoming mired in harmless error." *United States v. Hasting*, 461 U.S. 499, 501 (1983) (citation omitted); *see also Benton v. Maryland*, 395 U.S. 784, 798–99, (1969) (White, J., concurring) (explaining that "[i]n a time of increasingly congested judicial dockets," the concurrent sentence doctrine "is not a rule of convenience to the judge, but rather of fairness to other litigants"). In *Gardner v. Warden Lewisburg*, USP, 845 F.3d 99, 104 (3d Cir. 2017), the Third Circuit applied the concurrent sentence doctrine in a petition brought pursuant to 28 U.S.C. § 2254, and rejected claims of relief because those claims would not alter the petitioner's term of imprisonment; *see also United States v. Ross*, 801 F.3d 374, 378 (3d Cir. 2015) (emphasizing that relief under § 2255 is limited to those "claiming the right to be released" from custody).

Petitioner argues that his situation does not fit within the concurrent sentence doctrine because his § 924(c) conviction resulted in a consecutive sentence to be served in addition to his

---

[2] To date, the Supreme Court has not addressed whether *Brecht* applies to federal prisoners seeking post-conviction relief under 28 U.S.C. § 2255, but the Court assumes without deciding that it does.

life sentence and other sentences. The government responds that other courts, including one in this District, faced with similar factual scenarios—a deficient 924(c) conviction, but a life sentence on an unaffected count—have invoked the concurrent sentence doctrine and declined to vacate the § 924(c) conviction and conduct re-sentencing. *See In re Williams*, 826 F.3d 1351, 1356-57 (11th Cir. 2016); *Duka v. United States*, Civ. Nos. 13-3664 & 13-3665, 2020 WL 4530035, at *9-*10 (D.N.J. Aug. 6, 2020) (unpublished); *Roman v. Ebbert*, Crim. No. 17-1146, 2019 WL 247398, at *5 (M.D. Pa. Jan. 17, 2019) (unpublished); *Eubanks v. United States*, Crim. No. 97-110, 2019 WL 7293389, at *6 (D.S.C. Dec. 30, 2019).

Just last month, in *Kassir v. United States*, __ F.4d __, 2021 WL 2878508 (2d Cir. Jul. 9, 2021), the Second Circuit determined that the concurrent sentence doctrine applied on collateral review and affirmed the denial of relief to a petitioner because a successful challenge to his 18 U.S.C. § 842(p) conviction would not affect the petitioner's remaining life sentences. *See id.* at *9 ("[Petitioner's] challenge to his 18 U.S.C. § 842(p) conviction, even if successful, offers him no reasonable prospect of a shorter time in custody. He will remain in prison on dual life sentences for conspiring to kill people. We therefore exercise our discretion not to reach the merits of his claim.").[3]

---

[3] The Second Circuit based this decision on language of 28 U.S.C. § 2255, which requires a Petitioner to claim a right to release. *See id.* at *7 (citing 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.")); *see also Oslund v. United States*, 944 F.3d 743, 748 (8th Cir. 2019) (concluding that the district court did not err in applying the concurrent sentence doctrine where the petitioner was also sentences to two consecutive life sentences). Because the Second Circuit recognized that the petitioner might successfully set aside his convictions in a future proceeding, "it affirm[ed] the district court's judgment without prejudice to [petitioner's] renewing this claim if and when he brings a timely and colorable challenge to both of his concurrent life sentences." *See id.* at *9.

Shortly after the briefing in this matter concluded, the Seventh Circuit also weighed in on the question of whether a petitioner who had multiple life sentences was entitled to relief on his claim that his § 924(c) conviction was unlawful. *See Ruiz v. United States*, 990 F.3d 1025 (2021). There, the district court had denied Petitioner's § 2255 motion and declined to reach the merits of his claims, concluding that any error relating to the § 924(c) convictions was harmless because Ruiz faced seven life sentences, including two mandatory life sentences. As explained by the Seventh Circuit, "in most circumstances involving consecutive sentences, a prisoner would suffer tangible prejudice if an invalid conviction remained on his record because he would be required to serve a longer actual prison term." *Ruiz*, 990 F.3d at 1033–34. But under the circumstances presented, even if Ruiz could show that the reasoning in *Johnson* required his § 924(c) convictions to be vacated, it would not change the reality that he remained subject to seven unchallenged, valid life sentences. *See id.*

As pointed out by Petitioner, *Ruiz* is a divided out-of-circuit decision and may be distinguishable. First, Petitioner asserts that unlike the petitioner in *Ruiz*, his sentence has been affected by his erroneous § 924(c) conviction, because he has received fewer and later parole hearings than he otherwise would have received, and, thus, the conviction sufficiently impacts his "custody."[4] *See* ECF No. 22 at 4-5. Second, it is notable that the government has conceded

---

[4] The parties have not fully explained how Petitioner's § 924 conviction and sentence affected Petitioner's parole eligibility or provided the record of Petitioner's previous or upcoming parole hearings, but it suffices to say that Petitioner committed the crime in question in 1984 and was convicted under the "old law," which provides for such hearings. *See Coleman v. United States Parole Commission*, 726 F. App'x. 909, 911 n.1 (3d Cir. 2018) ("The Parole Act was repealed effective November 1, 1987, but it "remains in effect for individuals who committed an offense before that date.") (citing *Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 950 n.2 (8th Cir. 2008)). The fact that Petitioner is parole eligible also distinguishes Petitioner's situation from the petitioner in *Ruiz*, and also counsels against denying Petitioner's claim on the basis of harmless error and/or the concurrent sentence doctrine.

that Petitioner's § 924(c) conviction is invalid, whereas this issue was contested in *Ruiz*, and the Seventh Circuit's harmless error ruling allowed it to avoid becoming mired in difficult legal issues that would have no practical effect on Petitioner's multiple life sentences. *See Ruiz*, 990 F.3d at (explaining that it had not previously decided whether two of the potential predicate offenses underlying *Ruiz's* § 924(c) convictions—kidnapping resulting in death (18 U.S.C. § 1201(a)) and assault on a federal law enforcement officer (18 U.S.C. § 111)—are crimes of violence under § 924(c)(3)'s elements clause, and declining to address the more complicated merits questions).

In light of Petitioner's unrebutted allegations regarding his parole eligibility and the government's concession that Petitioner's § 924(c) conviction is invalid, which leaves no complicated merits questions for the Court to answer, the Court declines to apply either the harmless error or concurrent sentence doctrine to Petitioner's particular case. The Court will therefore grant relief and vacate Petitioner's § 924(c) conviction.

Having determined that Petitioner's § 924(c) conviction should be vacated, the Court next determines the remedy. Section 2255 provides a "flexible remedy," *Andrews v. United States*, 373 U.S. 334, 339 (1963), and a court has the discretion to vacate the judgment, grant a new trial, resentence, or correct the sentence, "as may appear appropriate," 28 U.S.C. § 2255(b). Having considered the parties' arguments, the Court declines to conduct full resentencing in this matter because it is not required by the Supreme Court's decision in *Davis* or the so-called "sentencing package doctrine."

As the government argues, the Supreme Court's decision in *Davis* does not support a full resentencing in this case. There, the Supreme Court stated that vacating the "entire sentence" following invalidation of a § 924(c) conviction is appropriate "'so that the district court may

increase the sentences for any remaining counts' if such an increase is warranted." 139 S. Ct. at 2336 (emphasis added) (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)). Permitting the sentencing court to increase the sentence on the remaining counts after one of the counts of conviction is vacated is permitted by the "sentencing package doctrine," which holds that: [w]hen a conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within the applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal. *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997) (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989)).

Under Third Circuit law, the sentencing packaging doctrines applies where counts of a conviction are interdependent, "result[ing] in an aggregate sentence, not sentences which may be treated discretely." *United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010). In *United States v. Davis*, 112 F.3d at 120, for example, the Third Circuit considered a situation where a defendant's Section 924(c) firearm conviction was vacated on collateral review. *See id.* The District Court then conducted a de novo resentencing and applied—to the remaining drug counts—a two-level weapon enhancement that had previously been barred by grouping of the later-vacated firearm count. *Id.* This resulted in an increased Guidelines range and a higher sentence on the drug counts, so the defendant appealed. The court of appeals affirmed. It held that the district court was authorized to resentence de novo on the undisturbed counts because the defendant's sentence "constituted an aggregate sentence that was based upon the proven interdependence" between the remaining and vacated counts. *Id.* at 122-23. Similarly, in *United States v. Miller*, the defendant's two child pornography counts were grouped, but when one of the counts was vacated on appeal,

the remaining count had a lower total offense level, and the Third Circuit held that de novo resentencing was appropriate. 594 F.3d at 181.

In contrast, where vacatur does not impact the total offense level, Guideline range, or sentence, the Third Circuit does not require resentencing *de novo*. See *U.S. v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013); *see also United States v. Ciavarella*, 481 F.Supp.3d 399, 409 (M.D. Pa., 2020) (explaining that for the sentencing package doctrine to apply "there must be some obvious link between the vacated counts and the sentence on the counts that remain").[5] Notably, the District Court in *Duka*, 2020 WL 4530035, at *11, determined that it was not required to resentence Petitioners *de novo* even if it vacated their 924(c) convictions because Petitioners had undisturbed life sentences: "Vacating the 924(c) convictions would not affect Petitioners' overall sentence of life imprisonment. There is no circumstance under which their life sentence for conspiracy to murder would change in these circumstances." *Id*; *see also Symonette v. United States*, 2020 WL 7767545, at *1 (S.D. Fla., 2020) ("I decline to conduct a full resentencing hearing. Instead, I will vacate Movant's conviction on Count 3 and also the 84-month consecutive [§ 924(c)] sentence imposed on that count. The concurrent life sentences

---

[5] As succinctly explained by the Court of Appeals for the District of Columbia in *U.S. v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006), "[t]he classic application of the 'sentencing package' idea involves a sentence in which the sentencing court initially imposed a consecutive § 924(c) sentence, but withheld any sentencing enhancement for gun use under § 2D1.1(b)(1) of the U.S. Sentencing Guidelines because the two provisions are mutually exclusive. *Id.* (citing *United States v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997)). In contrast, where "several concurrent life terms" for a group of convictions were imposed, and then, "once the package was complete," a further "consecutive 30–year term" for the 924(c) offenses was imposed, the D.C. Circuit ruled that the group of life sentences and the 30–year term "were in no way interdependent" and in consequence, the "sentencing package" doctrine did not apply. *Id.* at 790 (explaining that "[t]he life sentence on the grouped counts and the 30–year term for the § 924(c) violation were in no way interdependent, so the former is not unravel[ed]" by vacation of the latter[]" and "[t]he sentencing package doctrine thus affords no apparent basis for any resentencing on the other counts.").

imposed on Counts 1 and 2 shall remain undisturbed."), COA denied, *Symonette v. United States*, 2021 WL 3186792, at *2 (11th Cir. 2021).

Thus, as the government argues, the Supreme Court's decision in *Davis* and the sentencing package doctrine <u>do not</u> support a request for resentencing to reduce the sentences on the non-§ 924(c) counts in this case. Had Judge Sarokin reduced the kidnapping sentence to ameliorate the effect of the mandatory consecutive § 924(c) sentence, the sentencing package doctrine would potentially come into play. But that did not happen here. And, because Petitioner already is serving a life sentence, there is no need to increase his sentence, as contemplated by *Davis*. Here, the § 924(c) conviction carried a mandatory minimum sentence of five years, to be served consecutively to the other sentences, which the sentencing court separately imposed. Other than speculation on the part of Petitioner, nothing suggests the Court <u>increased</u> the sentences on the kidnapping or other charges due to the § 924(c) conviction. The sentencing took place prior to imposition of the Sentencing Guidelines; as such, Clark's § 924(c) conviction could not have increased his Guidelines or statutory penalties for the kidnapping conviction.

Petitioner's reliance on *Pepper v. United States*, 562 U.S. 476 (2011) is also misplaced. In *Pepper*, the Court held that a sentencing court must be permitted to consider evidence of post-sentencing rehabilitation when resentencing a defendant whose <u>initial sentence</u> has been overturned on appeal. *Id.* at 490. Petitioner's argument presumes in the first instance that Petitioner is entitled to have his entire sentence vacated and a full resentencing conducted in this habeas proceeding, and the Court has determined that he is not.

Having reviewed the relevant binding and persuasive precedent, the Court is satisfied that it is within the Court's discretion to vacate Petitioner's 924(c) conviction and five-year consecutive sentence but leave his other convictions and sentences undisturbed.

### b. Petitioner's Other Arguments for Relief

Petitioner's counsel also attempts to shoe-horn actual innocence arguments and challenges to the sufficiency of Clark's convictions for extortion, assault, kidnapping, and theft into this successive § 2255 motion, speculating that it is "possible" that petitioner was "wrongly convicted."[6] Petitioner has not sought permission from the Third Circuit to amend his § 2255 to add challenges to his other convictions. Thus, only his *Davis* challenge to the § 924(c) conviction is before the Court, not challenges to his other convictions. *See* 28 U.S.C. § 2244(b)(3)(A); *Burton v. Stewart*, 549 U.S. 147, 152 (2007) (district court "never had jurisdiction to consider" successive petition where the petitioner "did not seek or obtain authorization to file in the District Court"). "When a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson v. Johnson*, 313 F. 3d 128, 139 (3d Cir. 2002). Absent authorization, the Court therefore lacks jurisdiction over Petitioner's sufficiency of the evidence and actual innocence claims.

Furthermore, a habeas petitioner may establish that he is "actually innocent" of the crimes against him by showing that "in light of all the evidence it is more likely than not that no reasonable juror would have convicted him." *Bousley v. U.S.*, 523 U.S. 614, 616 (1998) (quoting

---

[6] As explained above, Petitioner has not established that the counts of his conviction are interdependent and that his sentence was a "package," and he is not entitled to a full resentencing. Petitioner's arguments about his ailing health, his post-sentencing rehabilitation, his family's concern for his welfare, and the weak evidence in his case are not justifications for a full resentencing either, absent a cognizable legal basis for resentencing.

*Schlup v. Delo*, 513 U.S. 298, 327–28 (1995) (internal quotation marks omitted)); *Wright v. Vaughn*, 473 F.3d 85, 92 (3d Cir. 2006).

Here, Petitioner has not demonstrated that he is "actually innocent" of the kidnapping or other charges. The actual innocence exception is "very narrow," *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992), to be used only in "rare" and "extraordinary" cases, *Schlup v. Delo*, 513 U.S. at 321. The petitioner must demonstrate that "the trial evidence was insufficient to support his conviction on a correct understanding of the law.... 'after viewing the evidence in the light most favorable to the prosecution.'" *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019) (quoting *Coleman v. Johnson*, 566 U.S. 650, 654 (2012)). To establish actual innocence, Petitioner would have to show, by a preponderance, that "a reasonable juror would have reasonable doubt" that he kidnapped and assaulted the letter carrier at gunpoint and attempted to extort the bank manager, among his other crimes. *See House v. Bell*, 547 U.S. 518, 538 (2006); *see Bousley*, 523 U.S. at 623-24 (petitioners must demonstrate, "'in light of all the evidence,'" "it is more likely than not that no reasonable juror would have convicted" them) (quoting *Schlup*, 513 U.S. at 327–328). Consequently, "[t]he right question under … *Bousley* is whether, applying current legal standards to the trial record, [a petitioner] is entitled to a judgment of acquittal." *Ryan v. United States*, 645 F.3d 913, 918 (7th Cir. 2011), vacated on other grounds, 566 U.S. 972 (2012).

That strict standard "requires, first, that petitioner adduce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (emphasis added). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is insufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

"New reliable evidence is almost always required to establish actual innocence." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002). "In addition to being reliable, i.e., credible, the evidence must be compelling." *Hyman*, 927 F.3d at 657. "This second requirement demands 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" *Id.* (quoting *Schlup*, 513 U.S. at 316).

Here, Petitioner does not identify any new evidence of innocence that was not presented to the jury, and is unable to meet the more likely than not 'that no rational juror would have voted to convict' standard." *Hubbard v. Pinchak*, 378 F.3d 333, 341 (3d Cir. 2004) (citation omitted). As such, any claims of actual innocence are unavailing and are dismissed for lack of jurisdiction.

### c. Certificate of Appealability

The Court denies a certificate of appealability as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### III. CONCLUSION

At this time, the Court grants the § 2255 motion in part, and vacates Petitioner's § 924(c) conviction and the 5-year consecutive sentence. The Court denies Petitioner's request for a full resentencing, and the remaining convictions and sentences shall remain undisturbed. The Court also denies a certificate of appealability ("COA"). Finally, the Petitioner's motion for emergency relief and a status conference are otherwise denied in light of the disposition of this matter. An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: August 12, 2021